Our second case for this morning is Gerhartz v. Richert. Mr. Kearney. Mr. Kearney Good morning, your honors. May it please the court. In 1966, the United States Supreme Court held that intrusions into the human body deserve as much protection under the Fourth Amendment as intrusions into the home. And thus, absent an emergency, a warrant is required before involuntarily seizing another individual's blood. So, Mr. Kearney, I understand all of that, but I'm just going to cut to the chase. Because at the time the officer is acting in this case, McNeely hasn't been decided yet. And yet the Wisconsin courts have decided Bolling, which extensively discusses schmerber. It's all about schmerber. And in Bolling, they interpret schmerber to mean that blood alcohol metabolism constitutes a per se exigent circumstance and you don't need a warrant. And so that turns out not to be the Supreme Court's view in McNeely, but we don't ask officers to have 20-20 foresight. So I don't understand, given where Bolling is and given the fact that this was an area of some uncertainty until McNeely, why there's not qualified immunity for the officers. I think, and I think the answer to that, your honor, is Bolling, you're correct, Bolling interpreted schmerber at length. But the fundamental and the linchpin of the Bolling court's holding was that schmerber can logically be read in one of two ways. Either to create a per se exception or as a typical exigent circumstances case. Well, but they may say that along the way, but they then conclude that it's their best understanding of schmerber that exigent circumstances exist because alcohol metabolizes in the human body. And they're not getting into all of these details that are later highlighted by McNeely. Things like, you know, can you get a telephonic warrant and how far are you from some place where the testing can occur and on and on and on. All the facts and circumstances. And so, you know, one of the things your brief does is cites a lot from the dissent in Bolling, but it's a dissent, those of us who write dissents sometimes would love that to be the law, but it isn't. The law that the officers would have known about if they, assuming they know about anything, is Bolling. Or at least that it's unclear. You've got some Utah court out there saying it goes the other way, but in an atmosphere of uncertainty, we give officers qualified immunity. Well, and I think the question is, to some extent, is does that qualified immunity come from Bolling alone? And if it does not, if we get past Bolling, then don't we start to look at the other precedent that's out there? Have we ever said that the holding of a state Supreme Court is a controlling law for purposes of qualified immunity? Some circuits have, but have we ever done that? Not to my knowledge. And we have said, have we not, that we look to the decisions of the Supreme Court and the Court of Appeals? Correct, Your Honor. And in Bolling, the Supreme Court of Wisconsin took issue with an extant holding of this court, is that correct? Correct, Your Honor. All right. And that was... They said Talkington was wrong. They rejected Talkington. They said... Well, that would be an issue. I mean, the Chief Justice's opinion in the Wisconsin case makes it clear. We're splitting with the Seventh there. Correct. There's no doubt about that. So the highest court in the circuit, at least, had said that in the exigent circumstances calculus, you have to take into consideration the question of whether there's the availability of a telephonic warrant, right? Right. And at that time, a telephonic warrant was available in the state of Wisconsin, am I correct? Correct. It was available. There's no record in the evidence as to why. Officers could not inquire a telephonic warrant here. And the decision in Talkington... And the law of the circuit is there needs to be that kind of evidence in the record to justify exigent circumstances. That was the holding of Talkington. Correct, Your Honor. And that was the holding of Talkington. And that holding was in accord with several other courts of appeals. And that's where you start to say that bowling is at odds with not only the precedent of this court, but also the precedent of the United States Supreme Court. I think it's hard to see... Let me stop you there, okay? At the time the blood was drawn, what had other circuits said about the need for a warrant to draw blood? The circuits... The Fourth Circuit in Reed had said in a breathalyzer, you don't need a warrant. But they also recognized that a blood test is a different level of intrusion on an individual's privacy. The Sixth Circuit had analyzed Schmerber as an exigent circumstances case and it held based on the circumstances there that no warrant was required in that case. The Tenth Circuit in Marshall analyzed... In 2003, 10 years after bowling, the Tenth Circuit in Marshall analyzed Schmerber at length, stated it was a totality of the circumstances, typical exigent circumstances analysis, contrary to what the Wisconsin Supreme Court had held in bowling, and said based on the facts of that case, a 1983 claim could go forward. Based on a warrantless blood draw. The Ninth Circuit in Ellis in 1999 had also analyzed Schmerber as a typical exigent circumstances case and allowed a claim under Section 1983 to go forward based in part on a warrantless blood draw. And the point of Schmerber I think... If I may interrupt one more time, my compliments to you for having all of those on your fingertips. That's really very good. Is there, besides Talkington, is there anything else in this circuit that is pertinent? In this circuit, apart from Talkington, I think really to your point about how this circuit had interpreted the qualified immunity analysis of looking first at controlling the United States Supreme Court precedent, and then only and controlling precedent from this court. And I think that's another pertinent area from this circuit's precedence. Now, in terms of analyzing warrantless blood draws, we did not see it, Your Honor. I'm troubled with how you treat the Cicer case in your reply brief. I call it Cicer, S-E-I-S-E-R versus Chicago, out of our court in August. Yes. It seems to me that that's a pretty tough case for you. It's... We would have preferred that it was decided later, but... A candid statement. I think... And what we've... There, the Illinois court had decided Cary, and Cicer did not face its decision on Cary alone. Cicer noted that Cary was consistent with precedent from other courts, and in particular, Cicer was... Cary had been consistent with the Fourth Circuit decision in Reed, stating that breathalyzers... Warrants are not required to do a breathalyzer. And I think there's an important distinction between a breathalyzer and a blood draw, which the Supreme Court has recognized. And the basic of that, the most important distinction, is that a person can refuse to do a breathalyzer. A person cannot refuse to do a blood draw so long as he is restrained. So I think not only is the invasion of privacy greater for a blood draw than a simple breathalyzer, but that is a case... On Schmerber, I think the one thing on Schmerber that I wanna say is, I don't know what more Justice Brennan could have done in that opinion to make it clear that the Supreme Court was not creating and not condoning a first state exception to the warrant requirement in that case. The decision is explicitly made based on the present record. We decide this case... It's repeated under the special facts of this case, given the present record. Our holding is limited to the present record. We are not deciding cases under other circumstances. And the analysis in Schmerber is... The dissipation of alcohol from the bloodstream is a factor in Schmerber, but it's not the only factor. The other factors that are not present here, which is that you had a single officer involved in investigating the accident under California law without the potential availability of a telephonic warrant. And those were the facts of Schmerber. The Wisconsin... Schmerber was carefully limited its holding to those facts, which fact the Tenth Circuit had noted in 2003, the Ninth Circuit, the Utah Court of Appeals noted in 2004, well after bullying. So let me quickly, before you sit down, ask you to say a word about your opponent's arguments about how well this issue has been preserved, the qualified immunity issue. Was all of this properly raised in the district court? And I think the starting point for that response, I think, is Mr. Gerhardt's complaint. He challenges that the violated... The blood draw while he was unconscious violated his Fourth Amendment rights generally, both that it was taken without probable cause and without his consent. And I think the best evidence that that put the issue... That put the defendants on notice was that they themselves affirmatively raised the accident circumstances question in their summary judgment briefing. And the district court passed on and considered the issue in summary judgment briefing. And I think under this court's decision in Bailey, that is sufficient to place the issue properly before this court. There... The appellees have talked about the opportunity to present evidence on this, but the entire police report is in the record, 20 pages. The officer who drew Mr. Gerhardt's blood submitted an affidavit. The word warrant is not mentioned once in any of these filings. And I think that the bottom of that is it's not in there because of bullying. Okay. Thank you, Your Honor. Thank you. Ms. Ford. May it please the court. I am Michelle Ford and I represent Defendant Appellees David Reichert, who is a Deputy Sheriff with the Calumet County Sheriff's Department in Wisconsin, and William Tyson, a Sergeant with the same department. This case arises out of a complaint and an amended complaint filed by William Gerhardt versus Deputy Reichert and Bill Tyson. The amended complaint alleged two claims through 42 U.S.C. Section 1983, a Fourth Amendment claim based upon Gerhardt's allegations that a forced blood draw that took place after he was in a serious motor vehicle accident was transported to the hospital by the investigating officer, was against his Fourth Amendment rights. Right. And there's some very strange behavior going on here. For example, the allegation that he's gotten his Miranda rights when he's unconscious, you know, and filling out these things, and not while he's in the vehicle being transported to the hospital having somebody pick up the phone and call in for a warrant. Exigent circumstances is a doctrine that relates only to warrants. I mean, it's the excuse for not getting a warrant. So you wouldn't be talking about exigent circumstances unless you were talking about warrants. So, I mean, why would you arrest somebody who's unconscious and explain the arrest citation to the unconscious person and tuck the citation in with his personal belongings? I mean, this is all very strange. It is an interesting and different situation. It's not interesting and different. It's misleading. Well, in Schmerber, the court relied on a case that had been decided prior to Schmerber in which an individual, the case is called Ruffhout v. Abram. But I don't know what that has to do with Mr. Gerhart's situation where there's reason to believe alcohol is involved in this accident. He's being transported. Schmerber exists. It's been on the books for a very long time. Why don't they get a warrant? And as Judge Ripple points out, this court has said this is a totality, like all things practically with warrants, it's a totality of the circumstances inquiry. That's correct. It seems like the officer is trying to create a record that looks like he did everything right except he forgot to get a warrant and he has this misleading statement that he told Mr. Gerhart's about what was going on. I'm sorry? He has a misleading statement that he told Mr. Gerhart's? Yeah, that Mr. Gerhart's unconscious while the officer is telling him what's going on. In the Brayhaupt case, the plaintiff was also unconscious. That doesn't count as notice in my book if you're passed out. And it certainly wouldn't be enough for consent. So consent is, you're not arguing consent. We're not arguing consent. In fact, Mr. Gerhart's never argued anything other than probable cause at the summary judgment level. We have to remember that we're dealing with two different motions here. In Mr. Gerhart's amended complaint, he did not argue that a warrant should have been obtained. Well, he says things that are like that. It seems to me there's a lot in the record about this. I don't like pointless exercises of forfeiture or waiver. And when everybody's joined issue on it, it doesn't seem to me like it accomplishes much. Well, it seems to me that Judge Randa, the trial judge, should have been presented with the facts and the case law that this court is now being presented with. What we have, essentially, instead, is a situation where the plaintiff has filed a new motion for summary judgment. I don't know. I found something in the record. Defendant's memorandum on summary judgment, docket 39, cites Schmerber. Reichert and Tyson argue that exigent circumstances are present. The district court makes a comment. He says, given the nature of the dissipation of alcohol from a person's bloodstream, exigent circumstances existed. I don't think Judge Randa was unaware at all that this issue was here. I'm sorry? You don't think that Judge Randa knew? Why would he have written that if he didn't know what he was talking about? Well, the briefing was based on Schmerber. It's right here on page 15 of his order. The decision of a government official to draw blood to determine an individual's blood alcohol content amounts to a search for Fourth Amendment purposes. He cites Schmerber. Blood can be drawn without a warrant if it's incident to a lawful arrest in their exigent circumstances. And he goes on to say in the next paragraph that they're, I mean, this issue is preserved? The defendants preserved the issue for purposes of arguing to the court. Mr. Gerhartz did not respond to the exigent circumstances argument. He submitted no evidence indicating that he never even mentioned the word warrant until after his Rule 59e motion was filed. Exigent circumstances is a warrant-based doctrine. I don't understand why, with that much in the district court's opinion, you think there's some problem in our at least reaching the issue. Now, I certainly understand your arguments on qualified immunity. I understand, which the judge doesn't rely on, but that's preserved too, I think. Well, we also argue the merits in our brief to preserve the issues. So if the court will not accept that Mr. Gerhartz waived all of these issues, including the lack of exigent circumstances, he argued in his amended complaint that the forced blood draw was illegal, but not because it was a warrantless search, but because there was no probable cause for the forced instance. We tailored our summary judgment motion to that, but we did address exigent circumstances. What Mr. Gerhartz did not do was supply any evidentiary material to the court in opposing that argument. But, you know, you look at the record, actually both sides' submissions, you look, in fact, sometimes the opponent of summary judgment doesn't even put in a compliant statement of contested facts, but you still look at the facts of the record in the light most favorable to the non-moving party, and we have evidence in the record. We know when the accident took place. We know when the officers arrived. We know how long it took them to go to the hospital. We know how many people. We know a lot of facts, and I'm not sure what other facts we need to know. If Mr. Gerhartz had challenged the failure to get a warrant in the first instance, we would have been able to address... Right. You would have said there's no telephone? We would have been able to address what press of business precluded the officers from getting a warrant in the first instance, but because that issue was not contested by Gerhartz, neither the parties nor the court, the court appropriately deemed that issue waived. Did the court say it was waived? The court took the defendant's proposed findings of fact as undisputed and used only those proposed findings of fact because Gerhartz had failed to submit any evidence. That's a completely different point. That's not saying issue A is waived. That's just saying, what are the facts in front of me for purposes of deciding this summary judgment motion? Oftentimes, even the moving party's facts are enough to permit resolution when they're taken in the light most favorable to the non-moving party. That is correct, and the facts on record are as follows. The only facts on record consist of Gerhartz's, sorry, Reichert's affidavit in which he describes the reasons why he ordered the blood draw. He does not describe exigent circumstances, but the court in its decision on its Rule 59 motion explained that contrary to the plaintiff's assertions, the court properly relied on Schmerber and determining that the blood draw was legal. In that case, the petitioner suffered injuries in an automobile accident and was taken to the hospital. While receiving treatment, a police officer arrested the petitioner for driving under the influence of alcohol and ordered a blood test over his objection. The court concluded that the warrantless blood test in the present case was permissible because the officer might reasonably have believed that he was confronted with an emergency in which the delay necessary to obtain a warrant under the circumstances threatened the destruction of evidence. Right. I mean, I saw this whole part in the Rule 59, and the plaintiffs properly drew the court's attention to McNeely, although McNeely actually should have been noticed by everybody before since it had already been out, but be that as it may. I don't know. Maybe there's some excuse for not getting a warrant. Maybe there's qualified immunity because of bowling. Maybe there isn't qualified immunity because of talking to... There are a number of issues in this case, but it's a case we can address, I think, without just punting it on waiver or forfeiture. Well, I think that the arguments that were made by Gerharts before this court were addressed on their merits in Apelli's brief, and so those issues have already been briefed. For example, the three-hour per se, you must get a warrant within three hours rule that is proposed by Gerharts is unsupported by any federal case. This court was absolutely correct in noting that, given the state of the law at the time of the blood draw, Schmerber applied, and the court correctly applied Schmerber, so qualifying... Well, did it correctly apply Schmerber is the question because, obviously, McNeely hadn't come out yet, and so I think the issue before us is whether anybody could think that Schmerber you shouldn't even try for a warrant. I agree with the court that this is a case where there has to be a decision made as to whether Schmerber is more factually analogous or whether McNeely is factually analogous. Now, McNeely only stands for the proposition that the diminishment of blood alcohol in an individual over time is not a per se exception to the exigent circumstances rule. And the court says it's not overruling Schmerber, it's not doing anything, it's clarifying what it said. Schmerber apparently basically says the same thing, it's just people had gone off on a different tangent. That's correct. So had all these arguments been made and addressed before the district court, the result would be the same. The district court looked at the issues, and because of the fact that this drunk driving conviction involved a serious auto accident in which not only Mr. Gerhart's, but another individual was hospitalized. I understand that. It was an unfortunate bit of driving by lots of people in blizzard conditions, but it doesn't answer the, you know, you're sort of going far afield from the question. They recognize that there's a reason to check the blood alcohol content, do they try to get a warrant? The answer, no, they don't even try. They don't have any reason not to get a warrant, not that we know about. But there's no evidence that they had time or the opportunity to get a warrant. Well, that can be assumed, Your Honor, but that's not in the record. What's in the record is that he's transported from the accident site to a facility where the blood is drawn. That is definitely in the record. What's also in the record is that documents were drawn up for his arrest, and at that time Wisconsin law had the implied consent law, which allowed for involuntary blood draws under circumstances involving individuals who did not consent or could not consent. Now that's since been overruled, obviously, by Schmerber, but... By a long time ago. I'm sorry, not by Schmerber. That law has since been overruled, but this accident occurred in 2006, so why wouldn't qualified immunity apply? That statute was on the books then? Yes, the implied consent law was on the books. In fact, Wisconsin courts are having a great deal of difficulty dealing with these types of cases now that the law has changed, and so I'm sure have many states. And officers are struggling equally because, in good faith, reliance on the implied consent law in 2006, David Reichert believed that he had cause and that it was perfectly legal for him to order an involuntary blood draw on an individual who could not consent, and the consent law is section 343.305 of the Wisconsin Code of Conduct. And it's the implied consent law that states any person who is on duty time with respect to a commercial motor vehicle or drives or operates a motor vehicle upon the public highways of this state, and I'll skip a little bit, is deemed to have consented to one or more tests of his or her breath, blood, or urine for purposes of determining the presence or quantity of his or her blood or breath, of alcohol, controlled substances, et cetera. And that was good law as of 2006. So... Okay, I think you need to wrap up, but you certainly, I appreciate your calling that to our attention. Okay. Now, I think that qualified immunity is simply a defense that cannot be gotten around. Gerhart's confirmed in his reply brief that the only claims they were alleging were individual capacity claims. Qualified immunity where the law is not clearly established, the second prong is met, and the plaintiff bears the burden of establishing that law. All right. Thank you very much. Defeats the claim. Thank you, Ms. Ford. Anything further, Mr. Carney? Just on the implied consent point, every state has an implied consent law. The District of Columbia has an implied consent law. That cannot preemptively write fundamental rights out of the Constitution. The McNeely, the implied consent law was complied with, too. That didn't prevent the court from reaching the constitutional issue. We've dealt with that in our reply brief. The implied consent law is there, but it should not, whether it was complied with or not, should not determine the outcome of the constitutional analysis one way or the other. Just quickly on the waiver, the district court didn't accept, I don't think, the facts. There's a footnote that the statement of facts are taken from the reply, from the brief, from the defendant's statement of facts. On 59E, Mr. Gerhart's clearly raised this. Whatever evidence the defendants wanted to present on why they didn't get a warrant under McNeely, there was more than ample opportunity for them to do so. They didn't present any. Judge Ripple, to your point on Talkington, you think the Court of Appeals, in this case, unanimously had relied on this Court's decision in United States v. Talkington in suppressing the evidence at issue in Boyle. It's hard to imagine how much different the state of affairs in Wisconsin would have been with respect to the securing of warrants if that decision had not been reviewed or had not been overturned. It still should be part of the Qualified Immunity Analysis. The Qualified Immunity Analysis is fair notice. That's the standard. Here, there's fair notice of Talkington, fair notice that Schmerber was not a per se exception to the warrant requirement. There is a dignity interest in the warrant requirement. The warrant requirement protects a dignity interest. Mr. Gerhards is sitting in jail and has been in jail since 2006 without being able to say that a neutral and detached magistrate authorized what happened that evening. The warrant requirement is fundamental. Justice Jackson, upon his return from Nuremberg, recognized that it's part of what makes us different. There's no evidence in the record as to why the officers did not attempt to secure a warrant here. Mr. Gerhards respectfully submits that the judgment of the district court should be reversed and the case remanded for further proceedings consistent with the court's opinion. On behalf of Mr. Gerhards, I thank the court for its time. Thank you very much. Thanks to both counsel. We will take this case under advisement.